# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7846 | **DATE** | 12/23/2002 |
| **CASE TITLE** | Thaddeus Todd Jr. vs. Dominicks Finer Food, et al | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Order. For the reasons stated in this memorandum opinion and order, Dominick's Motion for Summary Judgment is granted and this action is dismissed with prejudice in its entirety.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | **Document Number** |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | date docketed | | 36 |
| | Docketing to mail notices. | | docketing deputy initials | | |
| | Mail AO 450 form. | | 12/23/2002 | | |
| | Copy to judge/magistrate judge. | | date mailed notice | | |
| SN | courtroom deputy's initials | | SN | | |
| | | | mailing deputy initials | | |

U.S. DISTRICT COURT
CLERK
02 DEC 23 AM 7:40

Date/time received in central Clerk's Office

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THADDEUS TODD JR.,               )
                                 )
                Plaintiff,       )
                                 )
        v.                       )    No.  00 C 7846
                                 )
DOMINICKS FINER FOOD, et al.,    )
                                 )    DEC 2 3 2002
                Defendants.      )

## MEMORANDUM ORDER

Thaddeus Todd, Jr. ("Todd") has sued his former employer,
Dominick's Finer Foods ("Dominick's"[1]), charging that a series of
its employment decisions--its failure to promote him, its refusal
to provide him with a raise and then its discharging him--were
motivated by racial bias and were thus a violation of Title VII
(42 U.S.C. §§2000e to 2000e-17) and 42 U.S.C. §1981.  Dominick's
has moved for summary judgment under Fed. R. Civ. P. ("Rule") 56,
and both sides have complied with this District Court's LR 56.1.[2]

---

[1]  Because of the oddity in appearance of the possessive
form of a noun that is itself in possessive form, this opinion
will violate the purists' rule by using "Dominick's" as a
possessive noun-adjective as well.

[2]  LR 56.1 is designed to facilitate the resolution of Rule
56 motions by calling for evidentiary statements and responses to
such statements (in each instance with record citations), thus
highlighting the existence or nonexistence of factual disputes.
This opinion cites to Dominick's LR 56.1(a)(3) statement as "D.
St. ¶ -."  Todd's response to that statement is cited "T. Resp.
St. ¶ -," and Todd's LR 56.1(b)(3)(B) statement of additional
facts is cited "T. St. ¶ -."  This opinion employs the same "T."
and "D." abbreviations in referring to the parties' exhibits
("Ex."), memoranda ("Mem."), answering memoranda ("Ans. Mem.")
and reply memoranda ("R. Mem.").



For the reasons stated in this memorandum opinion and order, Dominick's motion is granted and this action is dismissed in its entirety.

## Facts

On May 8, 1999 Todd began working as a utility clerk in the Dominick's store located at 1900 South Cumberland Avenue, Park Ridge, Illinois (D. St. ¶1). Todd told his boss that he wanted to work in the stock department (T. St. ¶2). In August 1999 Todd applied for a promotion and was promoted to a cashier's position (D. St. ¶9). Both cashiers and stock clerks are classified as "regular clerks" under Dominick's collective bargaining agreement ("CBA") with a union (D. St. ¶10). Dominick's claims that cashiers and stock clerks work interchangeably (D. St. ¶10), but Todd contends that Dominick's own employees admit that no stock workers were assigned as cashiers (T. Resp. St. ¶10).

Cashiers and stock workers receive the same pay and benefits and have the same opportunities for advancement within the store (D. St. ¶10). Todd preferred to work in the stock position because it suited his nature (T. St. ¶2)--he describes himself as "not a people person" (T. Mem. 1). Todd worked as a stock clerk on about ten occasions (D. St. ¶11).

On August 16, 1999 Todd received a raise from $5.45 to $6 per hour as a result of his promotion to cashier (D. St. ¶14). On November 6, 1999 Todd's hourly wage rate increased to $6.45,

2

and on February 21, 2000 he received a raise to $6.55 (id. ¶15).
On May 22, 2000 Todd received another increase to $6.70 (id.),
but according to the CBA he was not scheduled for another raise
until mid-August 2000 (id. ¶16).

In May 2000 Basma Noona ("Noona"), who is Asian, became
Todd's supervisor (D. St. ¶17). Between May and August 4, 2000
Todd spoke to Noona repeatedly about why he had not received an
additional $0.10 raise (T. St. ¶15). Noona relayed to Todd
information she received from the payroll department that Todd's
pay rate was correct (D. St. ¶18).

On August 4, 2000 Todd again spoke with Noona about why his
latest paycheck did not include a raise (T. St. ¶16). Noona told
Todd not to speak to her in an angry and loud manner, although
Todd insists he spoke in "a very gentlemanly way" (T. Resp. St.
¶23). On the verge of tears, Noona spoke with her supervisor
Tony Nessie ("Nessie") about what Todd had said to her and about
his manner (D. St. ¶24, T. Resp. St. ¶24). Todd interrupted that
conversation and told her to see about his raise (D. St. ¶25, T.
Resp. St. ¶25). Noona began crying because, as she claims, she
felt threatened (D. St. ¶26). When Noona went into the
conference room to write about what had happened, Todd knocked on
the door and asked to speak with her (D. Ex. A (Todd Dep.) 220-
21).

Nessie asked Todd to step into the office (D. St. ¶30),

3

where they had a "heated argument" (Todd Dep. 217).[3] Nessie
claims that he then called the police because Todd refused to
leave the store (T. St. ¶19). Todd, however, argues that the
testimony of co-worker Bruno Belmonte ("Belmonte")(T. St. ¶20)
reflects a different sequence: that Nessie called the police
before he spoke with Todd (T. Mem. 6, 10). In any event, when
the police arrived, one of the officers accompanied Todd to the
break room so he could retrieve his belongings (D. St. ¶32).
While there, Nessie told Todd that he was being suspended and
that he would not be allowed in the store until the matter was
resolved (id.).

Dominick's Security Investigator Kenny Hayes ("Hayes")
prepared a Narrative Report discussing the events of August 4 (D.
St. ¶¶34, 36). In compiling that report Hayes relied on his
meeting with Todd, who explained that his actions on August 4
stemmed from his wanting to speak to Noona abut the raise that he
felt he deserved (id. ¶35). Hayes also included witness
statements from Noona and Nessie describing their perceptions of
the event (id. ¶36). Additionally, two employees reported seeing
Todd banging on the conference room door while Noona was inside,

---

[3] Although Todd denies D. St. ¶30 and Dominick's
description of the Todd-Nessie interchange as a "heated
argument," Todd's Dep. 217 belies that denial. In response to
the question "Were you raising your voice when you spoke with
Tony Nessie?" Todd said, "I think we both were raising our voice.
We were in a heated argument at the time."

and one employee reported hearing Todd yell at Noona (id.).

After reviewing the report, Dominick's Human Resource Advisor Herm Ilag ("Ilag") and its Director of Labor Relations recommended Todd's discharge, citing his threatening and abusive behavior on August 4 (D. St. ¶38). Ilag also noted several earlier customer complaints and sexual harassment complaints against Todd (id.). Dominick's District Manager Frank Cannistra agreed to terminate Todd based upon his August 4 actions (id.).

## Racially Discriminatory Discharge Claim

Though Todd's firing was of course the last of the three adverse (or assertedly adverse) employer decisions about which he complains in this lawsuit, it is not only the most serious of those but also the one best suited to a comprehensive discussion of the operative principles that control here. For those reasons, then, the substantive discussion in this opinion will treat with Todd's claims out of their chronological order.

Where any plaintiff presents no evidence--either direct or circumstantial--of race discrimination that of itself supports a reasonable inference of unlawful discrimination (Troupe v. May Dep't Stores Co., 20 F.3d 734, 736-37 (7th Cir. 1994)), such a plaintiff must attempt to create a presumption of such discrimination (Loyd v. Phillips Bros., Inc., 25 F.3d 518, 522 (7th Cir. 1994)). Hence Todd's claims must be evaluated under the familiar McDonnell Douglas v. Green, 411 U.S. 792, 802-07

(1973) burden-of-production-shifting approach.

At the first <u>McDonnell Douglas</u> stage, the plaintiff must establish[4] a prima facie case of race discrimination. To that end Todd must show that (1) he was a member of a protected class; (2) he was meeting Dominick's legitimate job expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees not in the protected class were treated more favorably by Dominick's (<u>Logan v. Kautex Textron N. Am.</u>, 259 F.3d 635, 639 (7th Cir. 2001)).

Todd readily meets the first and third criteria: He is African American (T. St. ¶14), and his firing was of course an adverse employment action (D. St. ¶39). This opinion need not address the second factor, which might perhaps call for an examination of conflicting testimony, because Todd clearly falls at the fourth hurdle.

To meet the first part of that requirement, a plaintiff normally demonstrates that he or she is similarly situated with respect to performance, qualifications and conduct of some other

---

[4] In the summary judgment context, of course, Todd's burden is only that of creating reasonable inferences, not one of proof as such (see <u>Anderson v. Baxter Healthcare Corp.</u>, 13 F.3d 1120, 1124 (7th Cir. 1994)). But any continued repetition of that burden involves an awkward locution, an awkwardness contributed to by the fact that so much of the caselaw speaks of what a party responding to a Rule 56 motion must "establish" or "prove" or "show." Whenever this opinion employs such terms, it should therefore be understood as denoting Todd's lesser burden of creating reasonable inferences, not the actual burden of persuasion.

employee by showing that the two of them had "dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them" (Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-18 (7th Cir. 2000)). But here Todd has provided no evidence that any other employee of Dominick's--whether or not fitting the "similarly situated" mold--engaged in allegedly similar abusive or threatening behavior and received better treatment (D. Mem. 4). Todd thus fails in his prima facie case, because he cannot identify any employee of any race who acted in an even arguably similar manner and was treated by Dominick's more favorably than Todd himself.

But even if Todd had been able to make out a prima facie case of racial discrimination, Dominick's has provided a legitimate nondiscriminatory reason for his dismissal (McDonnell Douglas, 411 U.S. at 802). Dominick's position that it fired Todd because he threatened and intimidated other Dominick's personnel (D. Mem. 4) surely provides a legitimate non-discriminatory reason sufficient to shift the burden of production back to Todd (McDonnell Douglas, 411 U.S. at 802-03), who must then show that Dominick's reason for discharging him was a pretext for race discrimination (id. at 804-05).

Koski v. Standex Int'l Corp., 307 F.3d 672, 677 (7th Cir.

7

2002)(quotation marks and citations omitted) describes that last
burden:

> To show that an employer's proffered reason is
> pretextual, a plaintiff must do more than demonstrate
> that the employer made a mistake or that the employer's
> reason was not good enough to support its decision.
> Instead, the plaintiff must demonstrate that the
> employer's reason is unworthy of belief.  Specifically,
> the plaintiff must show that the "nondiscriminatory"
> reason is not the real reason at all, but is instead
> nothing but a cover-up for discrimination.  Among other
> things, the employee might present evidence that would
> show that (1) the proffered reasons are factually
> baseless; (2) the proffered reasons were not the actual
> motivation for the discharge; or (3) the proffered
> reasons were insufficient to motivate the discharge.

Todd attempts that task by advancing general allegations of
racial bias on the part of management and by pointing to slight
inconsistencies between different witnesses' accounts of the
August 4 events (T. Mem. 10).

Rule 56 mandates the acceptance of Todd's rendition of
events.  Even so, however, Todd fails on each of his efforts to
discredit Dominick's proffered reason.

On the factually baseless prong, Todd does not dispute that
Noona cried or that she felt threatened (D. St. ¶26, T. Resp. St.
¶26).  Todd further admits to knocking on the door after Noona
had ended their conversation (Todd Dep. 220-21), and he even
admits to yelling and having a "heated argument" with Nessie
after his discussion with Noona (id. 217).  That evidence plainly
suffices to show that Dominick's stated reason is not factually
baseless.

8

Todd also fails the second of the <u>Koski</u> alternatives, a showing that Dominick's proffered explanation was not the actual reason for firing him. Todd urges that the August 4 incident was just an excuse (T. Mem. 6), urging that his promotion to cashier rather than to a stock position was a result of racial discrimination and simply an excuse to make him quit (T. Mem. 9). But when asked to supply factual support for Dominick's asserted racial bias, Todd points only to sketchy suggestions of a hostile work environment and of unequal working conditions (<u>id</u>.), but he cannot connect any of those allegations to the Dominick's personnel who oversaw his discharge.

Nor can Todd meet the third <u>Koski</u> alternative, a showing that the proffered reason was insufficient to motivate the discharge. Todd does not question Dominick's policy against abusive behavior (T. Resp. St. ¶37). Instead he argues that his actions were not insubordinate (T. Mem. 10). Yet the evidence from the eyewitness reports that Dominick's gathered (D. St. ¶¶35, 36, 38, 39) clearly supports the reasonableness of Dominick's conclusion that Todd acted in an abusive and threatening manner. Todd argues no evidence or caselaw that would allow a jury to reach a different conclusion--Belmonte's testimony that the police were called before rather than after Nessie's meeting with Todd (T. Mem. 10), even if credited, does not do the job.

Moreover, Todd's claim that he was not insubordinate does not affect the ultimately controlling issue: whether Dominick's was justified (in the sense of having an honest belief) in coming to its conclusion for discharge (<u>McClendon v. Indiana Sugars, Inc.</u>, 108 F.3d 789, 799 & n.12 (7th Cir. 1997)). To that end Todd's self-estimation of his behavior and the input from a third party such as co-worker Belmonte are irrelevant if Todd cannot show an impact on Dominick's decisionmaking process. Such evidence cannot create a material dispute as to whether Todd's August 4 actions violated Dominick's policy against abusive and threatening behavior.

Todd also attempts to rely on inconsistencies between different witnesses' accounts of the August 4 incident to demonstrate Dominick's desire to get rid of him (D. R. Mem. 4-5). But those minor quibbles, even with all reasonable inferences in Todd's favor, do not create any doubt that Dominick's citation of Todd's abusive and threatening behavior was the real reason for his discharge.

Finally, Todd tries to invoke <u>Day v. Colt Constr. & Dev. Co.</u>, 28 F.3d 1446, 1460-61 (7th Cir. 1994) to characterize Dominick's conclusion that Todd was insubordinate as insincere and pretextual (T. Mem. 10). But <u>Day, id</u>. at 1459 teaches only that summary judgment is improper where a "plaintiff can show that an employee with discriminatory animus provided factual

information or other input that may have affected the adverse employment action." Here nothing of that concept of poisoning the decisional well was even arguably present--none of the individuals who provided information to Dominick's in the investigation of the August 4 incident demonstrated any racially discriminatory animus.

In sum, both the slight and nonmaterial differences in testimony as to the events of August 4 and Todd's general allegations of his co-workers' creation of a hostile environment are insufficient to suggest any racial bias. And Todd's general allegations of management bias and of a purported desire to get rid of him are unsupported by the evidence and are insufficient to show that Dominick's stated explanation of firing him for insubordination was pretextual.

## Discriminatory Nonpromotion Claim

Far less discussion is needed to dispatch Todd's claim that he was denied a promotion to a stock clerk position based on his race (T. Am. Complaint ¶¶7, 8). To prevail in that respect, Todd must establish that Dominick's decision to place him in a cashier position amounts to an employment action that is "materially adverse." Ribando v. United Airlines, Inc., 200 F.3d 507, 511 (7th Cir. 1999)(quotation marks and citation omitted) teaches:

> We have explained, a materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits,

significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

Todd cannot show that his working as a cashier rather than as a stock clerk was a material adverse change. Todd preferred working as a stock clerk because he was "not a people person" (T. Mem. 1). Yet "not everything that makes an employee unhappy is an actionable adverse action" (<u>Smart v. Ball State Univ.</u>, 89 F.3d 437, 441 (7th Cir. 1996)). Both stock clerks and cashiers are classified as "regular clerk" positions--persons who receive the same pay and benefits and have the same opportunity for advancement.[5]

## Denying a Raise on the Basis of Race

Finally, Todd is equally unsuccessful on his claim that he was denied a raise on the basis of his race (T. Am. Complaint ¶¶7,8). No evidence comes even close to suggesting that. Salary rates for regular clerks (both cashiers and stock clerks) are set by the CBA, with raises scheduled every three months. According to the only evidence in the record (D. St. ¶19), Todd's pay was correctly set under the CBA. So Todd has not shown that any adverse employment action occurred (because he did not deserve a

---

[5] It might be appropriate to view Todd's acknowledgment that he "is not claiming that moving him from the stock room to the cash register is an 'adverse employment action'" (T. Mem. 10) as an abandonment of his discriminatory nonpromotion claim. That possibility need not be explored, though, for in any event the text has confirmed Dominick's entitlement to summary judgment on that score as well.

12

raise), nor has he shown that other similarly situated persons outside the protected class received a raise (no one, whether African American or Caucasian, received a raise when Todd did not, because all pay raises were scheduled by the CBA).

## Conclusion

Todd has failed to present evidence from which any reasonable inference of racial discrimination can be shown. To frame the matter in Rule 56 terms, he has not shown any genuine issue of material (that is, outcome-determinative) fact, so that Dominick's is entitled to a judgment as a matter of law. Its summary judgment motion is granted in its entirety, and this action is dismissed with prejudice.

Milton I. Shadur
Senior United States District Judge

Date: December 20, 2002

13